# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BLUEFIELD

**SARAH PRICE,**

    **Plaintiff,**

v.                                    **CIVIL ACTION NO. 1:18-00951**

**PENNYMAC LOAN SERVICE, LLC,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's motion to remand and Defendant's partial motion for dismissal of Plaintiff's Complaint. ECF Nos. 2, 5. For the reasons that follow, the court **GRANTS** Plaintiff's motion to remand and remands the action to Mercer County Circuit Court.

### I. BACKGROUND

Sarah Price brings this action against PennyMac Loan Service, LLC, the holder and servicer of a secured loan on her home located at 2812 Clovis Street, Bluefield, West Virginia (the "Bluefield Property"). Complaint at ¶ 3. The loan was originally entered into in August 2015 and insured by the Federal Housing Administration ("FHA") under the Single Family Housing Program which provides home-ownership opportunities to low income families. Id. at ¶¶ 3,4. Plaintiff claims that while she signed the Deed of Trust and truth-in-lending

disclosures, she did not sign the note. Instead, her now ex-husband, Randy Caroll signed the note and originally bore the financial obligation on the Bluefield Property. Id. at ¶ 7.

Plaintiff finalized her divorce to Caroll in July 2017, and the divorce order granted Price possession of the Bluefield Property. Id. at ¶¶ 5-6. Price then communicated to PennyMac that she intended to assume the loan. However, and despite Caroll's verbal authorization that PennyMac could speak with Price about the loan, PennyMac refused to speak with Price because she was not an obligor on the loan. Instead, PennyMac stated that it needed written authorization due to restrictions established by the Fair Debt Collection Practices Act. Id. at ¶¶ 8-14. Curiously, however, PennyMac sent Price a letter indicating her right to cure the outstanding default on the Bluefield Property. Id. at ¶ 20.

Price eventually obtained a contempt order against Carroll requiring him to provide PennyMac with the necessary written authorization. Id. at ¶ 23. Thereafter, Price requested that PennyMac update the loan's mailing address to the Bluefield Property. Id. at ¶ 30.

On January 18, 2018, Price was allegedly pre-qualified by PennyMac for a loan modification. Nevertheless, this opportunity expired due to Price's failure to return the loan modification application. Id. at ¶¶ 30-31. Price contends that

she never received this application because it was sent to Caroll's address, instead of the Bluefield Property. Id. at ¶¶ 32-33.

Despite Price's efforts to remedy the situation, the Bluefield Property was scheduled for foreclosure, id. at ¶¶ 26, 31-42, but the instant Complaint halted the planned foreclosure. Finally, Price alleges that a $6,682.02 balance was owed on the Bluefield Property loan when the Complaint was filed.

Price's Complaint includes three causes of action. Count One alleges unlawful debt collection under the West Virginia Consumer Credit and Protection Act ("WVCCPA") and seeks as relief:

- Actual damages;
- Civil penalties;
- Attorneys' fees and costs; and
- Equitable relief

Count Two alleges PennyMac breached its contract with Price, and seeks as relief:

- Actual damages;
- Punitive damages;
- Attorneys' fees and costs;
- Equitable relief; and
- Declaratory relief

Count Three alleges PennyMac engaged in fraud and seeks as relief:

- Actual damages;
- Punitive damages;

- Equitable relief; and
- Attorneys' fees and costs

Defendant filed her notice of removal on March 21, 2018, removing the action to federal court on the basis of diversity jurisdiction.  Plaintiff filed the instant motion to remand, seeking to return this matter to the Circuit Court of Mercer County.

## II. APPLICABLE LAW

Federal courts are courts of limited jurisdiction.  Article III of the U.S. Constitution restrict federal jurisdiction to claims arising from federal questions and claims that satisfy diversity jurisdiction.  28 U.S.C. § 1332 confers federal jurisdiction over cases and controversies exceeding $75,000 where complete diversity exists between all plaintiffs and defendants.  The party seeking removal carries the burden of demonstrating the court's jurisdiction over the matter by a preponderance of the evidence.  28 U.S.C. § 1332(a)(1); see also Strawn et al. v. AT&T Mobility, LLC et al., 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted); see also Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.").

Complete diversity of the parties is not contested.  Price is domiciled in West Virginia.  PennyMac is incorporated under

the laws of Delaware with its principal place of business in California. Therefore, the controversy is whether Plaintiff's action meets the $75,000 threshold required to sustain a diversity action in federal court. See 28 U.S.C. §§ 1332, 1441(a).

To determine the amount in controversy when the complaint establishes no concrete monetary demand, courts consider "the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate." McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 485 (S.D.W.Va.2001); see also Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 194 (4th Cir. 2017). In doing so, courts look at the record at the time that the notice of removal was filed. Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 936 (S.D.W. Va. 1996).

"The starting point for ascertaining the amount in controversy when the petition for removal was filed is obviously the complaint itself." Sayre v. Potts, 32 F. Supp. 2d 881, 887 (S.D.W. Va. 1999). "Estimating the amount in controversy is not nuclear science," as a removing defendant is somewhat constrained by the plaintiff. S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1317 (11th Cir. 2014). "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually

5

recover, but 'an estimate of the amount that will be put at issue in the course of the litigation.'" Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 196 (4th Cir. 2017) (quoting McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008)).

### III. DISCUSSION

Absent a specific demand for relief within the Complaint, McCoy, 147 F. Supp. 2d at 485, PennyMac extrapolates the following damages within the Complaint:

1) $15,000 in statutory damages for violations of WVCCPA (15 alleged violations multiplied by $1,000);

2) At least $10,000 in attorney's fees;

3) $70,696 in equitable relief (initial Bluefield Property loan obligation);

4) Unspecified actual damages;

5) Unspecified Punitive Damages; and

6) Unspecified "other relief" as the court deems equitable and just for claim of fraud.

Notice of Removal at p.8.

**A. Equitable Relief**

In cases seeking declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) (collecting cases). Here, the parties dispute what constitutes the appropriate object of the litigation: the initial purchase price

for the Bluefield Property ($70,696) or the amount owed on the Bluefield Property ($6,682.02).

When federal jurisdiction hinges on an amount in controversy, the parties, as here, flip their natural tendencies. Plaintiffs confine their action, while defendants use broad strokes to encapsulate every potential remedy a court could award. Such arguments are made amidst claims for relief which are foggy at best. Nevertheless, courts wary of "the long-established principle that a Plaintiff may tailor the remedy he seeks to avoid federal court jurisdiction," must take at face value the strictures Plaintiff asserts on its own action. Besse v. Gen. Motors Corp., 317 F. Supp. 2d 646, 651 (D.S.C. 2004); see also Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005)) (emphasis omitted) ("When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to 'show . . . what the stakes of litigation . . . are given the plaintiff's actual demands.'") (emphasis added). The only concrete requests for equitable relief within the Complaint flow from the alleged contractual failings by PennyMac,

a) refusing to provide Plaintiff with payment address, account number of payment amount on the account;

b) accepting and reviewing Plaintiff's financial status before refusing to review her for a loan modification and simultaneously referring the home to foreclosure;

7

c) and (sic) requesting and accepting loan assumption
      paperwork from Plaintiff while failing to exercise
      reasonable diligence in obtaining documents and
      information from Plaintiff to complete her loss
      mitigation application because Plaintiff complied with
      every request from Defendant and yet Defendant still
      failed to send Plaintiff the proper loss mitigation
      application, thereby denying her the ability to save
      her home from foreclosure and retain her investment in
      the home;

   d) Failing to conduct a face-to-face interview with
      Plaintiff as required by 24 C.F.R. § 203.604;

   e) Failing to consider Plaintiff for modification
      pursuant to FHA-HAMP as required by Mortgagee Letter
      2009-35;

   f) Failing to consider specific options to minimize loss,
      most notably assumption or recasting of the mortgage
      as required by 24 C.F.R. § 203.501;

   g) Otherwise failing to offer any foreclosure
      alternatives to Plaintiffs (sic) prior to instituting
      foreclosure proceedings . . .

Complaint at ¶ 77. Therefore, and as a result of these breaches, Plaintiff requests a "declaration that the Defendant breached the contract as alleged." Id. at ¶ 79. In a similar vein, Plaintiff's briefing represents that "the only equitable relief Plaintiff seeks is for Defendant to appropriately consider Price for any loss mitigation option to which she would qualify (a loan modification for lower payments, deed in lieu of foreclosure, forbearance plan, or pre-foreclosure sale)." ECF No. 4 at p.9.

Defendant argues that Price admits that the home itself is in controversy by stating in the introduction to the Complaint

that, "Plaintiff brings this action to prevent the needless foreclosure of the [Bluefield Property] and for other relief." Complaint at ¶ 1. This same broad language was considered in Addington v. LoanDepot.com, LLC, No. 2:17-CV-104, 2017 WL 4685428, at *1 (N.D.W. Va. Oct. 18, 2017) ("Addington"), where the complaint stated, "Plaintiffs brings this action to stop the foreclosure sale and save their home." Id. at *3. The Addington court failed to find this language dispositive towards defining the object of the litigation, id., and this court agrees. Instead, the court takes Plaintiff's limited request for loss mitigation at face value, as it must. See Besse, 317 F. Supp. 2d at 651.

Now the that court has determined that requiring PennyMac to consider loss mitigation options is the equitable relief at issue, the court must determine how to determine its value. To determine the value of the object of litigation, the Fourth Circuit "has employed the 'either party approach,' examining the potential pecuniary effect that a judgment would have on either party to the litigation." Liberty Mut. Fire Ins. Co. v. Hayes, 122 F.3d 1061 table op. at *2 (4th Cir. 1997); see also McCurdy v. Mountain Valley Pipeline, LLC, 105 F. Supp. 3d 606, 610 (S.D.W. Va. 2015) ("[A] court should 'ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the

plaintiff or its cost to the defendant.'") (quoting JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010)).

Our district and the Northern District of West Virginia have thoroughly examined the issue of whether the value of a home equates to the value of the litigation when a plaintiff seeks to halt an impending foreclosure proceeding. See Winnell v. HSBC Mortg. Srvcs., Inc., No. 2:11CV561, 2011 WL 5118805, at *2 (S.D.W. Va. Oct. 28, 2011) ("Winnell"); Bohigian v. Flagstar Bank, FSB, No. 1:11CV181, 2012 WL 112322, at *1 (N.D.W.Va. Jan. 12, 2012) ("Bohigian"); Carter v. Nat'l City Mortg., Inc., No. 1:14CV70, 2014 WL 2862953, at *3 (N.D.W. Va. June 24, 2014) ("Carter"); Hudak v. Selene Fin. LP, No. 1:15CV20, 2015 WL 1539740, at *1 (N.D.W. Va. Apr. 7, 2015); Schubert v. Fed. Nat'l Mortg. Ass'n, No. 5:12-CV-166, 2013 WL 12137236, at *2 (N.D.W. Va. Mar. 25, 2013); Addington, at *1; Raspet v. Shellpoint Mortg. Servicing, a Div. of New Penn Fin., LLC, No. 1:18CV19, 2018 WL 1785565, at *4 (N.D.W. Va. Apr. 13, 2018).

From these cases involving impending foreclosures, the court perceives a commonsense, bright line test: if the plaintiff is not obligated on the loan, and therefore foreclosure provides the only remedy for a defendant, the value of the home is the amount in controversy. See Addington, at *5 ("In cases where the court found that the full balance of the loan was the amount in controversy, the common thread was that

10

foreclosure was the defendant's only avenue to collect on the debt."); see also Winnell, at *2-3 (outstanding loan balance is amount in controversy when plaintiff's obligations discharged through bankruptcy); Carter, at *3 (same); Bohigian, at *3 (reasoning that full balance owed on loan not at issue because plaintiff was personally liable for loan balance and thus foreclosure was not "defendant's only avenue of enforcing the loan.").

Defendant argues that Plaintiff is not obligated on the loan because she did not sign the original Bluefield Property note. See ECF No. 10 at p.10; see also Complaint at ¶ 10. Moreover, Plaintiff's ex-husband, the obligor on the note, has been absolved of his obligation by the divorce decree. See id. at ¶ 61. Plaintiff responds that her actions illustrate her intent to assume the obligation of the note. Even more, Price has been treated as an obligor by Defendant through allegedly mailing her a notice of right to cure the default on the Bluefield Property. See id. at ¶¶ 4(a), 20, 57-61.

In lieu of Price's apparent attempts to assume the obligation on the Bluefield Property, see id. at ¶¶ 8-10, 25, the court finds that foreclosure is not the only method of recourse by which the outstanding loan balance could be recovered. Therefore, the court finds that requiring PennyMac

11

to engage in loss mitigation does not implicate the value of the Bluefield Property.

The facts in this action align with Lee v. Citimortgage, Inc., 739 F. Supp. 2d 940, 947 (E.D. Va. 2010). There, the plaintiff claimed that the mortgagor had failed to comply with FHA regulations incorporated within the Deed of Trust before scheduling a foreclosure sale on the home. As relief, Lee requested that the court provide him with a declaratory judgment which would require the mortgagor to have a face-to-face meeting with him prior to the commencement of foreclosure. The court found that the direct pecuniary value of a face-to-face meeting (or the cost to defendant in availing itself to this meeting) was not monetarily measurable and remanded the action to state court.

In this case, as in Lee, Price represents that her requested relief is only for PennyMac to consider her for any loss mitigation option to which she would qualify. See ECF No. 4 at p.9. If the court grants Plaintiff's requested relief, the court fails to see how the consideration of loss mitigation options implicates the value of the home, especially when Price asserts that she is responsible for the outstanding balance on

the loan.[1]  Accordingly, the court finds Price's equitable relief too speculative to establish a value in the instant controversy.

**B. Actual Damages**

Defendant concedes the actual damages Plaintiff requests are "unspecified."  See ECF No. 1-1 a p.6; see also ECF No. 10 at p.4.  Nevertheless, PennyMac states that Plaintiff's fraud claim can include recovery for emotional damages, see Notice of Removal at p.6 (citing Persinger v. Peabody Coal Co., 196 W. Va. 707, 474 S.E.2d 887 (1996)), therefore Plaintiff could potentially recover from her allegedly suffering "stress, annoyance, and inconvenience, harm to credit and ability to obtain credit, and fear of loss of home." See Complaint at ¶¶ 53-55.  Accordingly, Defendant asserts that Price's alleged damages could by itself exceed that $75,000 amount in controversy.  This speculative assumption is not enough, but instead Defendant must produce at least some evidence of the harm caused, may it be compensatory or emotionally, to Price. See McGraw v. Discover Fin. Servs., Inc., No. CIV.A.2:05 0215,

---

[1] If Plaintiff's representations have misled the court, nothing prevents the Defendant from filing a second notice of removal upon receipt of an amended complaint or some "other paper" from which it may first be ascertained that the case is one which has become removable. 28 U.S.C. § 1446(b).  Of course, the case may not be removed on the basis of diversity more than one year after commencement of the action. 28 U.S.C. § 1446(b)

2005 WL 1785259, at *4 (S.D.W. Va. July 26, 2005). Because the court is unable to ascertain a reasonable value in actual damages requested by Plaintiff, the court attributes no value to Plaintiff's claims for actual damages.

**C. Punitive Damages**

In the same vein, no value may be imputed to Plaintiff's "unspecified" request for punitive damages. ECF No. 1-1 a p.6; see also ECF No. 10 at p.4. Moreover, because punitive damages awards are usually awarded relative to actual damages which the court could not reasonably ascertain, Judy v. JK Harris & Co. LLC, No. 2:10-CV-01276, 2011 WL 4499316, at *7 (S.D.W. Va. Sept. 27, 2011), the court is unable to determine a reasonable amount of expected punitive damages in this action.

**D. Attorney's Fees and Statutory Penalties**

Given Defendant's upward approximations the benefit of the doubt -- $25,000 in attorney's fees and $15,000 in statutory penalties[2] -- fails to eclipse the $75,000 amount in controversy threshold.

---

[2] The court would be reticent to gloss over the fact that the West Virginia legislature amended the WVCCPA in 2015 insofar as "the court may adjust the damages awarded pursuant to section 101 of this article to account for inflation from 12:01 a.m. on September 1, 2015, to the time of the award of damages in an amount equal to the consumer price index." See W. Va. Code § 46A-5-106 (2015). According to the Bureau of Labor Statistics website, $1,000 in September 2015 had the same buying power as $1,048.79 in March 2018. See CPI Inflation Calculator, Bureau of Labor Statistics, U.S. Dep't of Labor,

**E. Summary of Damages**

Aggregating the alleged claims and Plaintiff's requested relief indicates that this matter does not implicate federal jurisdiction. Plaintiff paints the action as an effort to ensure PennyMac complies with its obligations under the FHA's regulations before foreclosing on the Bluefield Property. This coupled with the vagueness in Price's requests for relief leaves Defendant unable to concretely establish and communicate the value of Plaintiff's claims. Accordingly, the court finds that the defendant has failed to carry its burden of establishing by a preponderance of the evidence that the amount in controversy in this action is more than $75,000.

**IV. CONCLUSION**

For the reasons set forth in this Memorandum Opinion and Order, the court **GRANTS** Plaintiff's motion to remand, (ECF No. 3), and **REMANDS** the case to the Circuit Court of Mercer County, West Virginia.[3]

---

<http://www.bls.gov/data/inflation_calculator.htm> (last visited Aug. 12, 2018). Thus, Plaintiff could recover approximately $1,048 for every violation of the WVCCPA. As this differentiation only adds $768 ($48 multiplied by 16 violations) to the potential amount in controversy, this is insignificant.

[3] The Court further **DENIES** plaintiff's request for reasonable cost and fees incurred, because "this case was removed for an objectively reasonable, although incorrect, reason . . ." Ryan Envtl., Inc. v. Hess Oil Co., 718 F. Supp. 2d 719, 728 (N.D.W.

The Clerk is **DIRECTED** to remove this action from the court's active docket. The Clerk is further directed to forward a certified copy of this Memorandum Opinion and Order to counsel of record and to the clerk of the Mercer County Circuit Court.

It is **SO ORDERED** this 6th day of September, 2018.

**ENTER:**

David A. Faber
Senior United States District Judge

---

Va. 2010) (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)).